ROBERT R. POWELL, ESQ. CSB#159747
DENNIS R. INGOLS, ESQ.   CSB#236458
LAW OFFICES OF ROBERT R. POWELL
925 West Hedding Street
San José, California  95126
T: 408-553-0200 F: 408-553-0203
rpowell@rrpassociates.com

Attorneys for Plaintiffs
MARK RISSO and A.R. through
Guardian Ad Litem Linda Risso

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
(El Dorado Division)

| | |
|---|---|
| MARC RISSO, et al. | Case Number: 2:07-CV-00451-DAD |
| Plaintiffs, | PETITION FOR APPROVAL OF MINORS' COMPROMISE OF CLAIMS |
| vs. | |
| | Date: August 22, 2008 |
| | Time: 10:00a.m. |
| COUNTY OF EL DORADO, et al. | Crtrm: 27 |
| | Judge: Magistrate Drozd |
| Defendants. | |

I.   Introduction

This case stems from the alleged wrongful removal and continued detention of A.R. (born January, 1998), from her father, Marc Risso, on or about March 25th, 2006.

**Summary of the Facts of the Case**

Mark is the biological father of A.R., who was born in January 1998.  Mark Risso is divorced from A.R.'s mother, Kim Meath, and is remarried to Lora Risso, who has been the primary mother-figure in A.R.'s life for over 6 years now.  Kim Meath has had limited involvement in A.R.'s life.  Ms. Meath took A.R. to the hospital for the alleged purpose of

1

having them look at A.R.'s shoulder (for a condition the child has had for years, and was hardly anything new), but really wanting to try and make something of the wispy red marks on A.R.'s cheek that Lora Risso had told her occurred from a hair dryer the Friday afternoon (March 24, 2006) that Ms. Meath picked the child up.

On March 25th, 2006, Nurse Nancy Housel examined A.R.'s shoulder at her mother's request, and noticed 3 faint, elipse-shaped burns on A.R.'s jaw. She asked the child how they happened; the child told her she had caused them herself by accidentally coming in contact with the end of a hair dryer while drying her hair. Housel somehow concluded that the burns were from a car cigarette lighter, despite A.R.'s clear statements they did not, and called El Dorado County (hereinafter "COUNTY") CPS. Social worker Matthies responded. City of Placerville (hereinafter "CITY") Police Department Officer Todd Carvor arrived a short time later.

A.R. told Housel, Matthies, Carvor, and anyone else who asked, that she herself had accidentally inflicted the burns with a hair dryer. Nonetheless, Housel, Matthies, and/or Carvor decided that the burns were inflicted intentionally with a car cigarette lighter by Lora Risso.

Then, without contacting Mark Risso or the alleged abuser Lora Risso, the decision was made, by Mathies and/or Carvor, to place A.R. into protective custody, without a warrant and without exigent circumstances.

Matthies placed A.R. in Ms. Meath's care. Ms. Meath was living with her boyfriend (against whom she had a restraining order), in his father's trailer. A.R. slept in the same bed as her mother and the mother's boyfriend. Kim admitted to using methamphetamines the

Petition for Approval of Minors' Compromise of Claims
RISSO V. COUNTY OF EL DORADO, ET AL
2:07-CV-00451-DAD

night before, prompting Magana to remove A.R. again (from Ms. Meath) the following Monday.

Plaintiffs contend that Defendants Magana and Killian took over the case after the removal and, together with Matthies, submitted false information, and failed to include exculpatory information to the juvenile court in an effort to convince the court to sustain jurisdiction over A.R. for reasons having nothing to do with the safety and well-being of A.R.

Plaintiffs alleged that the Defendants violated their civil rights when they improperly removed A.R. from her home without a warrant, and in the absence of exigent circumstances or consent.

Defendants contended that both the removal and continued detention were reasonable and justified based on the circumstances confronting the Defendants at the time of the removal and continued detention, and that whether or not reasonable, the Defendants were entitled to qualified and/or absolute immunity for the removal and continued detention of the minor children. Defendants further contend that all of their actions were reasonable, honest, taken in good faith, and without malicious intent.

Significant issues, including the extent and cause of A.R.'s physical injuries, are disputed, as are the issues of qualified and absolute immunity. In compromise, and without any admission of liability by any Defendant for the acts complained of, the Plaintiffs have settled with the COUNTY and the CITY, and now petition this Court for approval of the compromise of claims on behalf of the minor plaintiff A.R. It must be pointed out that, although the individual defendants did not agree to settle, the CITY and the COUNTY did agree to settle with Plaintiffs, on the condition that all individual defendants be dismissed.

//

## II. Parties

The parties allegedly involved in this matter are/were as follows:

1. Plaintiff Marc Risso, father of A.R.
2. Plaintiff A.R., daughter of March Risso, by and through her paternal grandmother and Guardian Ad Litem, Linda Risso.
3. Defendant County of El Dorado and the following employees:
   - Gary Matthies, social worker
   - Gloria Magana, social worker
   - Trudy Killian, social worker
4. Defendant City of Placerville and the following employees:
   - Todd Carvor, police officer

It should be noted that A.R. has been represented in this matter by Robert R. Powell, attorney for her father and her Guardian Ad Litem, Linda Risso.  Mr. Powell, Marc and Linda Risso have personally reviewed and approved of the settlement proposed herein.

## III. Current Status of Settlement / Litigation

The Plaintiffs have agreed to a monetary settlement explained below with regard to all Defendants, without any admission of liability by any Defendant for the acts complained of, with each side bearing their own fees and costs, except as otherwise provided for hereinbelow.  All Defendants will all be dismissed as part of the settlement of this matter.

## IV. Proposed Compromise of Minor's Claims with COUNTY and CITY.

Under the monetary terms of the settlement, the COUNTY will fund an annuity with Annuity Issuer, which will make the scheduled payments, as set forth in Exhibit A to this Petition.  It is understood that both the COUNTY and the CITY are settling with both Plaintiffs, and that it is only for practicality sake (i.e. fewer checks to be written, etc.) that the COUNTY is funding the annuity in its entirety.

In addition to complying with the requirement under California law (Prob. Code §3600, et seq., see Prob. Code §3602(c)(1) authorizing order placing money in a single premium-deferred annuity, which is what is proposed herein) that a minor's award be secured for the minor's benefit after payment of fees and expenses to counsel or lien holders (there are no lien holders), the payment schedule is posited in a four-payment format with the hope of providing the minor plaintiff with money at ages 18, 21, 25 and 30, times in life when it might serve significant purposes such as assisting with college or graduate school expenses, purchasing a car, or a down-payment on a home.  Here, the agreed-upon payment schedules provide for increasing amounts, in congruence with (presumably) the minor Plaintiff's increased maturity and responsibility at the aforementioned ages.

The terms of the settlement also include the purchase of periodic payments by the County of El Dorado from The **Allstate Life Insurance Company** ("Annuity Issuer") which includes a Non-Qualified Assignment with **Allstate International Assignments, Ltd.** ("the Assignee"), (Ex. A to Declaration of Robert R. Powell – Assignment and Release), to be made on behalf of the County of El Dorado to the minor Plaintiff under the terms of the settlement initially reached in principle after settlement negotiations between counsel for all parties.

**Distribution To Plaintiffs**

In settlement of the case, without admitting liability, the Defendant COUNTY agreed to pay $133,333.33, and the Defendant CITY agreed to pay $66,666.67 to Plaintiffs.  Plaintiff Marc Risso is to receive $133,333.33 less attorneys' fees ($53,333.33), and the minor Plaintiff A.R. is to receive $66,666.67 less attorneys' fees ($26,666.67).  Therefore, the final, net distribution of the proceeds shall be:

- Marc Risso - $80,000.00 (60% of $133,333.33)
- Minor Plaintiff, A.R. - $40,000 (60% of $66,666.67)
- Robert Powell – $80,000.00
    - $53,333.33 (attorney fees at 40% of Marc's proceeds)
    - $26,666.67 (attorney fees at 40% of A.R.'s proceeds)
- TOTAL = $200,000.00

See Attached Exhibit A.  As stated above, A.R.'s sum will be placed in an annuity.

To the extent that the court considers the amounts received by A.R. small in comparison to those received by Marc Risso, it is important to point out that because A.R. is a minor, all of the expenses associated with the juvenile court trial, the therapy, counseling, etc., have all been borne by Marc and Lora Risso.  Further, all costs related to this action were advanced by Plaintiffs' counsel, who has agreed to absorb them, waiving his contractual right to reimbursement of said costs, which total nearly $5,000.

Moreover, A.R.'s reputation in the community was not soiled, as were her father's.  A.R. was not made to suffer the indignation of being called a child abuser, as was Marc.  A.R. did not have to surrender custody of her children, as did Marc.  And on and on.

A.R. was 8 years old at the time of the incidents giving rise to this litigation, and appears to have fully recovered from any emotional damages she might have suffered.

The minor plaintiff is young, and the actual, after-tax money she will receive in payouts on the annuity will exceed the settlement amount received by her father, after taxes.

**Attorney Fees & Costs**

The Court is also asked to approve the payment of attorney fees to plaintiffs' counsel (The Law Offices of Robert R. Powell) in the sum of $80,000.00.  This represents forty percent (40%) of the total gross settlement figure of $200,000.00, and a discount of $22,500

($102,500 -$80,000) compared to the rate agreed to by Plaintiffs in their retainer agreement for this case, which provides for a 50% contingency rate of *net* (after costs) settlement proceeds, with Plaintiffs' counsel agreeing to absorb said costs to promote settlement.

Plaintiffs' counsel had no prior relationship with any of the Plaintiffs prior to representing Marc in the juvenile dependency matter in the El Dorado Superior Court.

Plaintiffs' counsel submit their fees are reasonable and should be awarded in the amount requested.

## V.  Conclusion

Plaintiffs and their counsel request the Court approve the distribution of proceeds of settlement as set forth hereinabove, and the payment of attorneys' fees, without a hearing. Plaintiffs have submitted a proposed order in this regard and respectfully request the Court's signature thereon, and filing thereof.


Date: 7/17/08                                                    /S/  Robert R. Powell
                                                                 Robert R. Powell, Esq.
                                                                 Attorney for Plaintiffs

Case 2:07-cv-00451-DAD   Document 50   Filed 07/18/08   Page 8 of 10

EXHIBIT A

ATTACHMENT
TO
PETITION FOR MINOR'S COMPROMISE
FOR:
A.R. – DOB: 01/17/1998

**Payments**

In consideration of the Petition for Minor's Compromise, attached hereto, The County of El Dorado, agrees to pay to the Plaintiff, A.R. (the "Payee") according to the schedule as follows, (the "Periodic Payments"):

| **Guaranteed Lump Sum Payment** | | | **Guaranteed Payout** |
|---|---|---|---|
| *Age* | *Amount* | *Payment Date* | |
| 18 | $10,000 | 01/17/2016 | |
| 21 | $15,000 | 01/17/2019 | |
| 25 | $25,000 | 01/17/2023 | |
| 30 | $41,000 | 01/17/2028 | **$91,000** |

*The above Periodic Payments have a cost of $40,000.*


**Payee's Rights to Payments**
The Plaintiff acknowledges that the Periodic Payments cannot be accelerated, deferred, increased or decreased by the Plaintiff or any Payee and no part of the payments called for herein nor any assets of the Defendant is to be subject to execution or legal process for any obligation in any manner, nor shall the Plaintiff or any Payee have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise.

**Consent to Non-Qualified Assignment**
The Plaintiff acknowledges and agrees that the Defendant may make a "Non-Qualified Assignment" within the meaning of Section 130(c), of the Internal Revenue Code of 1986, as amended, of the Defendant's liability to make the Periodic Payments set forth herein. Specifically, The County of El Dorado(the "Assignor"), as the payor of the consideration recited herein, shall purchase the above Periodic Payments and assign its obligation by signing a Non-Qualified Assignment document to make the Periodic Payments called for above in this Attachment To Petition For Minor's Compromise to Allstate International Assignments Ltd. ("the Assignee").  The Assignee's obligation for payment of the Periodic Payments shall be no greater than that of the Defendant (whether by judgment or agreement) immediately preceding the assignment of the Periodic Payments obligation. Allstate Life Insurance Company will guarantee the obligation of the Assignee.  Allstate Life Insurance Company has received high ratings from A. M. Best, (A+), Standard & Poor's, (AA), and Moody's, (Aa2). **(see attached ratings sheet)**

Such assignment shall be accepted by the Plaintiff without right of rejection and shall completely release and discharge the Defendant from the Periodic Payments obligation assigned to the Assignee. The Plaintiff recognizes that the Assignee shall be the sole obligor with respect to the Periodic Payments obligation, and that all other releases with respect to the Periodic Payments obligation that pertain to the liability of the Defendant shall thereupon become final, irrevocable, absolute, and non-contingent.

**Right to Purchase an Annuity**
The Defendant itself or through its Assignee reserves the right to fund the liability to make the Periodic Payments by purchasing a "qualified funding asset", within the meaning of Section 130(d)

of the Code, in the form of an annuity policy from Allstate Life Insurance Company. The Assignee shall be the sole owner of the annuity policy and shall have all rights of ownership. The Assignee may have Allstate Life Insurance Company mail payments directly to the Payee. The Plaintiff shall be responsible for maintaining the accuracy of the current mailing address and mortality information for Payee with Allstate International Assignments Ltd.

**Non-Assignment**
None of the Periodic Payments and no rights to or interest in any of the Periodic Payments (all of the foregoing being hereinafter collectively referred to as "Payment Rights") can be

   i.   Accelerated, deferred, increased or decreased by any recipient of any of the Periodic Payments; or
   ii.  Sold, assigned, pledged, hypothecated or otherwise transferred or encumbered, either directly or indirectly, unless such sale, assignment, pledge, hypothecation or other transfer or encumbrance (any such transaction being hereinafter referred to as a "Transfer") has been approved in advance in a "Qualified Order" as defined in Section 5891(b)(2) of the Code (a "Qualified Order") and otherwise complies with applicable state law, including without limitation any applicable state structured settlement protection statute.

No Plaintiff or Successor Payee shall have the power to effect any Transfer of Payment Rights except as provided in sub-paragraph (ii) above, and any other purported Transfer of Payment Rights shall be wholly void. If Payment Rights under this Agreement become the subject of a Transfer approved in accordance with sub-paragraph (ii) above, the rights of any direct or indirect transferee of such Transfer shall be subject to the terms of this Agreement and any defense or claim in recoupment arising hereunder.

**Payee's Beneficiary**
Any payments to be made after the death of the Payee pursuant to the terms of this Attachment to Petition for Minor's Compromise shall be made to such person or entity as shall be designated in writing by the Payee to the Assignee. If no person or entity is so designated by the Payee, or if the person designated is not living at the time of the Payee's death, such payments shall be made to the estate of the Payee. No such designation, nor any revocation thereof, shall be effective unless it is in writing and delivered to the Assignee. The designation must be in a form acceptable to the Assignee before such payments are made.

**Discharge of Obligation**
The obligation the Assignee to make each Periodic Payment shall be discharged upon the mailing of a valid check to the designated address or upon electronic transfer into the designated bank account in the amount of such payment to the Payee named in this Attachment to Petition for Minor's Compromise. Upon notice from the Payee that a payment was not received, the Assignee will initiate reasonable stop payment action and upon confirmation that the funds were not negotiated or deposited, Assignee will process a replacement payment.